■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID C. CATRON, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Chemung County (Danaher, Jr., J.), rendered October 20, 1986, upon a verdict convicting defendant of the crimes of rape in the first degree and sexual abuse in the first degree.

Defendant stands convicted of raping and sexually abusing by forcible compulsion a 29-year-old woman who has been essentially deaf and mute since age three. Defendant admitted he engaged in sexual intercourse with her but testified at trial that it was consensual, in stark contrast to a statement he made to police wherein he confessed in detail to forcibly raping and sexually abusing the complainant.

On the eve of trial, defendant orally moved to have the indictment dismissed because the sign-language interpreter used by the Grand Jury lacked certification with a particular national registry of interpreters for the deaf, and because of supposed but undefined bias due to the interpreter's personal acquaintance with the complainant. After considering her qualifications and comparing the complainant's Grand Jury testimony with an earlier statement the latter had given to the police through a different interpreter, County Court concluded that the Grand Jury interpreter was qualified and reliable and that a hearing for the purpose of assessing her fitness, as requested by defendant, was unnecessary. Defendant continues to take issue with this ruling.

Judiciary Law § 390 mandates the appointment of a qualified interpreter of sign language in any legal proceeding involving a deaf party or witness (see, Matter of Chatoff v Public Serv. Commn., 60 AD2d 700; see also, CPL 190.25 [3] [d]). No qualifications are set forth in the statute and thus the determination that a particular interpreter is "qualified" lies within the sound discretion of the trial court. Examination of the record discloses that County Court did not abuse its discretion in finding the Grand Jury interpreter qualified; indeed, arguably, she was as capable as the interpreter employed at trial, whom defendant found unobjectionable. Although the complainant, on cross-examination, attributed inconsistencies between her Grand Jury and trial testimony, respecting whether she was atop or beneath defendant and as to how she was being held while being attacked, to misunderstandings on the part of the Grand Jury interpreter, this is of negligible importance when contrasted with other discrepancies by which defendant sought, unsuccessfully, to impeach

her, and where, as here, the trial's focus was on whether the sexual contact was occasioned by force.

Defendant's remaining arguments merit only brief comment. Unavailing is the contention that coercion in the second degree (Penal Law § 135.60 [1]) should have been charged as a lesser included offense of rape in the first degree (Penal Law § 130.35 [1]), for one may commit the latter without concomitantly committing the former (see, People v Tiedemann, 111 AD2d 280). And his request for an instruction that consent is a defense to rape was redundant given that County Court charged the jury that forcible compulsion, or lack of consent, was an element of each crime in the indictment, which the People were obliged to prove.

Finally, the fact that the seal on the "rape kit" was inexplicably broken does not warrant concern about evidence tampering since the breaking occurred after the pertinent forensic analysis had been completed (see, People v Julian, 41 NY2d 340, 344), and, in any event, the evidence was not in and of itself inculpatory in that it revealed only that someone's seminal fluid had been released in or on the complainant.

Judgment affirmed. Kane, J. P., Yesawich, Jr., Levine, Harvey and Mercure, JJ., concur.