[991 NE2d 692, 969 NYS2d 834]

The People of the State of New York, Respondent, v Thomas Lee, Appellant.

Argued May 1, 2013; decided May 30, 2013

## POINTS OF COUNSEL

*Cleary Gottlieb Steen & Hamilton LLP*, New York City (*Arminda B. Bepko* and *David E. Brodsky* of counsel), and *Office of the Appellate Defender* (*Richard M. Greenberg* and *Margaret E. Knight* of counsel) for appellant. I. The appointment of a biased interpreter was improper, where the court refused to inquire into the availability of disinterested interpreters and failed to set up a proper mechanism to monitor the accuracy of the translation. (*Matter of James L.*, 143 AD2d 533; *Matter of Yovanny L.*, 33 Misc 3d 894; *People v Constantino*, 153 NY 24; *Advanced Tech. Incubator, Inc. v Sharp Corp.*, 701 F Supp 2d 861; *People v Ranieri*, 149 Misc 2d 948; *People v Branch*, 46 NY2d 645; *People v Furey*, 18 NY3d 284; *Matter of Beer Garden v New York State Liq. Auth.*, 79 NY2d 266; *Scott v Brooklyn Hosp.*, 93 AD2d 577; *People v Meyer*, 78 AD2d 662.) II. The evidence permitted by the trial court under *People v Sandoval* (34 NY2d 371 [1974]) was excessive and overwhelmingly prejudicial. (*People v Williams*, 56 NY2d 236; *People v Mayrant*, 43 NY2d 236; *People v Cooke*, 101 AD2d 983; *People v Rahman*, 62 AD2d 968, 46 NY2d 882; *People v Clark*, 42 AD3d 957; *People v Gonzalez*, 221 AD2d 203; *People v Smith*, 18 NY3d 588; *People v Ellis*, 94 AD2d 652; *People v Gamble*, 182 AD2d 703; *People v Mitchell*, 161 AD2d 247.) III. The trial court erred by refusing to instruct the jury not to decide the case solely on the basis of which side it believed. (*People v Russell*, 266 NY 147; *People v Warren*, 76 NY2d 773; *People v Brown*, 30 AD3d 609; *People v Victor*, 62 NY2d 374; *People v Fish*, 234 AD2d 890; *People v Vera*, 94 AD2d 728; *People v Knowell*, 94 AD2d 255; *People v Khan*, 68 NY2d 921.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*John B.F. Martin* and *Sheryl Feldman* of counsel), for respondent. I. Defendant's complaints about the official court interpreter are largely unpreserved and entirely meritless. (*Matter of James L.*, 143 AD2d 533; *People v Melendez*, 8 NY3d 886; *People v Robles*, 86 NY2d 763; *People v Odum*, 67 AD3d 1465; *People v Wilson*, 188 AD2d 405; *People v Ko*, 133 AD2d 850; *People v McLean*, 15 NY3d 117; *People v Kinchen*, 60 NY2d 772; *People v Olivo*, 52 NY2d 309; *People v Abar*, 99 NY2d 406.) II. The Appellate Division correctly concluded that the trial court's *Sandoval* ruling

was a proper exercise of its discretion. (*People v Hayes*, 97 NY2d 203; *People v Walker*, 83 NY2d 455; *People v Rahman*, 62 AD2d 968, 46 NY2d 882; *People v Hawkins*, 11 NY3d 484; *People v Grant*, 7 NY3d 421; *People v Kello*, 96 NY2d 740; *People v Claudio*, 64 NY2d 858; *People v Mattiace*, 77 NY2d 269; *People v Williams*, 12 NY3d 726; *People v Williams*, 56 NY2d 236.) III. The court properly instructed the jury on the burden of proof. (*People v Allen*, 69 NY2d 915; *People v Nuccie*, 57 NY2d 818; *People v Dory*, 59 NY2d 121; *People v Umali*, 10 NY3d 417; *People v Drake*, 7 NY3d 28; *People v Feerick*, 93 NY2d 433.)

## OPINION OF THE COURT

PIGOTT, J.

At issue on this appeal is whether the trial court abused its discretion in refusing defense counsel's request to replace a state-employed court interpreter because he was acquainted with the complainants. Under the circumstances of this case, we conclude that it did not.

Defendant Thomas Lee and a codefendant, Victoria Chin, were charged with burglary in the second degree and grand larceny in the third degree for stealing several thousand dollars' worth of property from the Manhattan apartment of complainants, a husband and wife. At trial, the People called complainant wife, who spoke Cantonese. Prior to her testimony, the court had arranged for a court interpreter to translate her testimony into English. On the day of testimony, the interpreter apprised the court that he was a "friend" of complainant husband, who had introduced the interpreter's father to construction loan officials. The interpreter had also met complainant wife, when she had on occasion stopped in on business meetings he had with her husband. He did not meet with either of them socially. The interpreter also stated that he knew the husband had "served federal time," but denied feeling uncomfortable translating for the wife and stated he had no knowledge of the facts of the case.

The court permitted defense counsel to voir dire the interpreter, who denied that he personally had any business relationship with the husband. Defense counsel nevertheless sought to remove the interpreter because of the relationship and the interpreter's knowledge of complainant husband's "intimidating violent nature," which, in counsel's view, could affect the interpreter's ability to translate objectively. The court denied the request, observing that the interpreter was a state employee

who had taken an oath to fairly discharge his duties as a court interpreter.

Defendant was found guilty of the burglary and grand larceny counts. The Appellate Division affirmed and rejected defendant's request for a new trial based on the trial court's failure to appoint a new interpreter, observing that "the court and defense counsel thoroughly questioned the court interpreter about any possibility of bias, and there is no reason to believe that defendant was prejudiced by the use of this interpreter" (89 AD3d 633, 633-634 [1st Dept 2011]). The court noted that the interpreter was a "career court employee who was presumably well aware of his duty to translate testimony verbatim and accurately," that he did not know the facts of the case, and that there was "substantial corroborating evidence through the testimony of another witness and video surveillance films" to sustain defendant's conviction (*id.* at 634). A Judge of this Court granted leave to appeal (19 NY3d 975 [2012]), and we affirm.

A trial court is obligated to appoint a court interpreter in all criminal cases when it "determines that a party or witness . . . is unable to understand and communicate in English to the extent that he or she cannot meaningfully participate in the court proceedings" (Uniform Rules for Trial Cts [22 NYCRR] § 217.1 [a]). Prior to engaging in their duties, court interpreters must execute and file a constitutional oath of office to faithfully discharge the duties of the position of court interpreter. Just as the trial court has the discretion to determine whether an interpreter is necessary in the first instance (*see* Uniform Rules for Trial Cts [22 NYCRR] § 217.1), or is qualified to serve in that capacity (*see People v Catron,* 143 AD2d 468, 468 [3d Dept 1988], *lv denied* 73 NY2d 853 [1988]), the trial court is also in the best position to determine whether an interpreter, once appointed, is biased in favor of a party or witness, thereby necessitating removal and replacement (*see People v Rivera,* 268 AD2d 538, 539 [2d Dept 2000], *lv denied* 95 NY2d 802 [2000]).

Here, the trial court did not abuse its discretion in denying defendant's request that the court interpreter be removed. The interpreter complied with his ethical obligation by notifying the court that he was a friend of complainant husband. Upon receiving that information, the court questioned the interpreter as to whether he (1) knew the facts of the case, and (2) would be uncomfortable translating for complainant wife. Having received a negative answer to both questions, the trial court allowed defense counsel to question the interpreter. Satisfied that its

questioning and that of defense counsel uncovered no bias on the part of the interpreter, the court properly exercised its discretion in not removing him.

Defendant's reliance on *Matter of James L.* (143 AD2d 533 [4th Dept 1988]) is misplaced. In that case, the trial court appointed the complainant's son to serve as an ad hoc interpreter pursuant to Judiciary Law § 387* to translate for the complainant. In doing so, however, the trial court failed to inquire "into the extent of his bias," ascertain his "qualification to translate," or caution the son "to translate exactly what the primary witness had said" (*id.* at 533-534).

Here, the court questioned the interpreter concerning his relationship with complainants, and there was no need to ascertain his qualifications or warn him to translate exactly what complainant wife said. As a state employee who had taken an oath to interpret, it can be presumed that the interpreter knew his ethical/professional obligations to translate the testimony verbatim. On the facts of this case, the court could have reasonably found that the danger the interpreter would distort complainant wife's testimony was remote, particularly because he possessed no knowledge concerning the facts of the case.

We have considered defendant's remaining arguments and conclude that they are without merit.

Accordingly, the order of the Appellate Division should be affirmed.

RIVERA, J. (dissenting). Where, as here, a court interpreter is revealed to have prior personal or pecuniary relationships with the complainants in a criminal matter, there exists, at a minimum, a substantial claim of an appearance of bias, if not actual bias. In my view, the trial court's failure to disqualify the court interpreter and substitute an alternate interpreter, coupled with the judge's refusal to provide for an adequate mechanism to confirm the accuracy of the challenged interpretation, amounted to an abuse of discretion. Therefore, I respectfully dissent.

---

* This section provides, in relevant part, that
"[i]f the services of an interpreter be required in any court and there be no unemployed official interpreter to act therein, the court may appoint an interpreter to act temporarily in such court. Such interpreter shall before entering upon his duties file with the clerk of the court the constitutional oath of office."

A trial court must appoint an interpreter in cases where a party or witness "is unable to understand and communicate in English to the extent that he or she cannot meaningfully participate in the court proceedings" (Uniform Rules for Trial Cts [22 NYCRR] § 217.1 [a]). The court interpreter's role in a trial is thus significant, and an interpreter potentially has enormous impact on the proceedings. Indeed, it is the interpreter's words which are heard by the jury and judge and become part of the evidentiary record.

It is the duty of an interpreter to faithfully communicate verbatim the testimony of a non-English speaking witness (*see* Unified Court System Court Interpreter Manual and Code of Ethics Appendix J, Canons of Professional Responsibility for Court Interpreters Canon 1 [Dec. 2008], available at http://www.nycourts.gov/COURTINTERPRETER/pdfs/CourtInterpreter Manual.pdf [accessed May 24, 2013]). In fulfilling this duty, a court interpreter must avoid serving where he or she may be compromised due to conflict or bias. Canon 6 of the Unified Court System's Canons of Professional Responsibility for Court Interpreters provides that

> "[c]ourt interpreters shall not engage in, nor have any interest, direct or indirect, in any activity, business or transaction, nor incur any obligation, that is in conflict, or that creates an appearance of conflict, with the proper discharge of their interpreting duties or that affects their independence of judgment in the discharge of those duties" (*see* Unified Court System Court Interpreter Manual and Code of Ethics Appendix J, Canons of Professional Responsibility for Court Interpreters Canon 6 [Dec. 2008], available at https://www.nycourts.gov/COURT INTERPRETER/pdfs/CourtInterpreterManual.pdf [accessed May 24, 2013]).

Ensuring that an interpreter is qualified and unbiased is critical to safeguarding the fairness of the proceedings and the integrity of the legal system.

Here, the interpreter demonstrated a commendable level of professionalism and sensitivity to his ethical obligations when he apprised the court of his prior personal relationship and dealings with complainant husband. Specifically, he stated that he was complainant's acquaintance, knew of complainant's prior criminal background, had held business meetings with complainant, and that the interpreter's father had secured financial

assistance for his business from complainant. The interpreter also noted his familiarity with complainant wife—a witness herself—whose trial testimony he was called upon to interpret from Cantonese to English. The interpreter thus informed the court of both a personal and pecuniary connection to complainants, and knowledge of complainant husband's criminal history.

Informed of this relationship, the trial court was presented with a facial violation of Canon 6 and was required to inquire and determine the best way to address this bias, actual or perceived. The majority acknowledges that it is the trial court's responsibility to determine whether bias exists necessitating removal and replacement (see majority op at 179). They, however, conclude that Supreme Court did not abuse its discretion by denying the request to remove this interpreter. I disagree because I believe that the trial court failed to take adequate steps to ensure the accuracy of the interpretation, and to provide a mechanism to preserve the interpretation for review on any subsequent appellate challenge.

For all intents and purposes, the majority's decision establishes an irrebuttable presumption in favor of official court interpreters under oath, regardless of the potentially compromising circumstances. If all that is necessary to overcome a reasonable claim of bias based, as is the case here, on both personal and pecuniary relationships, is reference to the interpreter's oath and the interpreter's lack of familiarity with the specifics of a case, parties with a reasonable suspicion for perceiving some bias would be without recourse, regardless of the strength of the claim of bias. If the fact that the interpreter has taken an oath to faithfully discharge his or her duties is sufficient to overcome a challenge of bias or conflict, then there would never be grounds to remove even the most obviously conflicted interpreter.

That an interpreter is unfamiliar with a case, relied on by the trial court and the majority in support of the failure to substitute the interpreter in this case, is similarly insufficient. The need for Canon 6 illustrates the real possibility that a court interpreter can be biased or burdened by a conflict of interest, regardless of the interpreter's lack of knowledge of the facts of a case.[1] Certainly a court interpreter with years of experience in

---

1. Even those who genuinely believe they can discharge their duties without bias may, albeit unconsciously, phrase testimony in a way to sound

(n. cont'd)

the courtroom, familiar with legal terminology, the order of proceedings and testimonial evidence, would be able to ascertain the import of the witness' testimony.

In this case, substitution of the interpreter would have resolved concerns of any actual or potential bias. However, the trial court not only refused to secure a substitute, he failed to even inquire as to the availability of such a substitute, constituting an abuse of discretion.

Of course, it is not always possible to have an interpreter available without causing undue delay to the proceedings, and potentially adversely impacting the rights of the parties. Where a court makes reasonable effort to identify a substitute interpreter, and determines that such substitute is unavailable or cannot be made available without disrupting the proceedings, circumstances may require that the court proceed with the challenged interpreter. In such case, it is essential that the court ensure that reasonable steps are taken to mitigate bias, and that the original testimony is preserved in such a manner as to permit a defendant to confirm the accuracy of the interpretation should the defendant so desire. It must also be possible for meaningful judicial review should defendant discover inaccuracies or otherwise posit a colorable argument as to the fairness of the proceedings.

Here, the trial court failed to implement a mechanism to confirm the accuracy of the interpretation, thus eliminating the possibility of appellate review of the testimony. In response to defense counsel's concerns about the accuracy of the interpretation, the trial judge informed defense counsel that the defendant's family and friends were parties "obviously interested in the correctness of [the] translations" and that there "was no issue whatsoever about the translation and its appropriateness," or else the family members would have "hurdl[ed] the well" to alert counsel or the court of any inaccuracies. This reliance upon interested parties, and persons in the courtroom, cannot seriously be considered a realistic and sound method to confirm the accuracy of the witness' testimony as interpreted. Certainly the court could not have meant to invite disruption in the courtroom. Nor could the trial judge realistically rely upon individual observers, without any apparent training in the highly

---

more reasonable or less harsh to a juror's ear. The most well-intentioned interpreter may be susceptible to the affect of bias, thus, the exhortation in Canon 6 to avoid even the appearance of conflict.

skilled profession of interpreters, to serve as a "check" on the interpretation. It is unacceptable and unrealistic for a court to intend to supplant a qualified court interpreter, who the trial court had already indicated was a trusted member of the court personnel, with a person of unknown skill, and potential bias, and allegiance to a party. As the majority notes, reliance on ad hoc interpreters creates additional challenges for the courts and the parties (see Matter of James L., 143 AD2d 533 [4th Dept 1988]). Moreover, the responsibility for providing interpretive services in a criminal case lies with the court, not the defendant (Uniform Rules for Trial Cts [22 NYCRR] § 217.1).

Given the numerous languages and dialects of the parties, witnesses and others who pass through our nation's courts daily,[2] the courts and our society face tremendous challenges in ensuring that the courts are accessible, and that our legal system treats individuals fairly, regardless of their language abilities. The American Bar Association's recent passage of Standards for Language Access in Courts, supported by the Conference of Chief Justices and the Conference of State Court Administrators, notes that "[a]ccess to justice is unattainable for those who are not proficient in English unless they also have access to language services that will enable them to understand and be understood" (see American Bar Association, Standards for Language Access in Courts at VIII [Feb. 2012], available at http://www.americanbar.org/content/dam/aba/administrative/ legal_aid_indigent_defendants/ls_sclaid_standards_for_language _access_proposal.authcheckdam.pdf [accessed May 24, 2013]). It is to the credit of New York, and the many individuals who serve as court interpreters, that the Unified Court System provides a mechanism for interpretive services in numerous languages.[3] However, in this case, the trial judge's failure to

---

2. Court interpreters are required to undergo testing to assess their verbal and written proficiency in English, foreign languages and basic legal terminology. Court interpreters in New York are proficient in Albanian, Arabic, Bengali, Cantonese, Croatian, Dutch, French, Greek, Haitian Creole, Hebrew, Hindi, Italian, Japanese, Korean, Mandarin, Polish, Punjabi, Romanian, Russian, Serbian, Spanish, Urdu and Wolof (see Candidate Guide to the Language Assessment Testing Program for Court Interpreting, available at http://www.nycourts.gov/courtinterpreter/pdfs/candidateguide.pdf [accessed May 24, 2013]).

3. "New Yorkers speak more than 150 different languages and dialects. More than 30 percent of New Yorkers—almost five mil-

(n. cont'd)

properly address defendant's claims of bias in a manner that would obviate the risk of bias, or which would allow for meaningful appellate review on a subsequent challenge, was error.

Judges GRAFFEO, READ and SMITH concur with Judge PIGOTT; Judge RIVERA dissents in an opinion in which Chief Judge LIPPMAN concurs; Judge ABDUS-SALAAM taking no part.

Order affirmed.

lion people—speak a language other than English at home. Last year, utilizing the services of more than 1,000 interpreters (approximately 300 staff and more than 700 per diem interpreters) the New York courts provided interpreting services in 105 different languages" (*see* Court Interpreting in New York, A Plan of Action: Moving Forward at 2 [June 2011], available at http://www.nycourts.gov/publications/pdfs/ActionPlanCourt InterpretingUpdate-2011.pdf [accessed May 24, 2013]).