The People of the State of New York, Respondent,
against
Mazhar Chaudhary, Appellant.



Appeal from a judgment of the Criminal Court of the City of New York, Kings County (Gilbert C. Hong, J.), rendered November 6, 2013. The judgment convicted defendant, upon a jury verdict, of endangering the welfare of a child.




ORDERED that the judgment of conviction is affirmed.
In a superseding accusatory instrument dated August 9, 2010, defendant was charged with numerous crimes, essentially alleging that he had sexually abused the complainant, his daughter, on many occasions between February 1, 2009 and October 15, 2009. Defendant's daughter was born on April 17, 1998. All of the charges, save for one count of endangering the welfare of a child (Penal Law § 260.10 [1]), were dismissed prior to jury deliberations. Following the trial, the jury found defendant guilty of the remaining charge.
On appeal, defendant contends that the Criminal Court erred in permitting a prosecution witness, the complainant's half brother, to testify that defendant had been physically abusive to his former wife, the complainant's mother, on the ground that defendant had opened the door to such testimony. Defendant further contends that reversal is required because the prosecutor asked him two improper questions during cross-examination, and the court compelled him to use an interpreter while testifying. Finally, defendant claims that the court failed to state the expiration date of the order of protection on the record at sentencing.
Prior to jury selection, the parties and the court discussed a so-called "bad blood" defense regarding defendant and a prosecution witness, the complainant's older half brother, with whom the complainant was living at the time of the trial. The Criminal Court determined that the "[d]efense can bring it out as a motive to lie if they want to, but . . . if they do, I will give the People an opportunity on redirect to ask why the bad blood occurred. I think that's pretty basic." The court added that the prosecutor was "on notice as to what she can redirect on, and [counsel] can decide whether . . . to cross on it or not."
During cross-examination of the complainant's half brother, the witness agreed with defendant's counsel that, in the past, he had had "difficulties and issues" with defendant. The prosecutor then indicated that since counsel had asked "whether or not there was bad blood between" the witness and defendant, she was "going to ask why there is bad blood." The court stated, "I think that is fair game. If you are going to ask, he can explain why there is some sort of genuine reason for bad blood, that [does not] go to a motive to lie. I think that he has [the] right to explain why they don't get along." Defense counsel objected.
The witness testified on redirect examination that, when he was a teenager, defendant "was physically abusive toward [complainant's] mother." He "heard the abuse, and I came to her aid and [defendant and I] came to blows." Both the witness and defendant were arrested at the time. On re-cross-examination, the witness denied that he had had a fight with defendant because defendant had accused him of stealing $600 from his business to buy a video game device. The witness told counsel that he had "the time line all wrong" and that they were "two completely separate events."
It is undisputed that, in 2009, defendant was married and his wife lived in Pakistan, but defendant lived in an apartment in Brooklyn with his former wife and the children from that relationship. During cross-examination, the prosecutor asked defendant if he knew why his former wife had told the police that she saw him sleeping with his daughter. Defendant's counsel immediately objected and moved to strike the question. The trial court indicated that "[t]here was no answer" to the question. The prosecutor subsequently asked defendant if his wife in Pakistan had any feelings about defendant living with his former wife and children. Defendant replied, "[y]es." Defendant's counsel objected. The court sustained the objection, and stated, "[t]hat will be stricken. Disregard the answer, jury."
At sentencing, the court issued a full order of protection in favor of the complainant and against defendant. The court did not specify on the record the duration of the order of protection. However, the order of protection in the court file clearly indicates that it expires on November 5, 2018.
"The extent of redirect examination is, for the most part, governed by the sound discretion of the trial court"; however, where "the opposing party opens the door' on cross-examination to matters not touched upon during the direct examination, a party has the right on redirect to explain, clarify and fully elicit [the] question only partially examined' on cross-examination" (People v Melendez, 55 NY2d 445, 451 [1982], quoting People v Regina, 19 NY2d 65, 78 [1966]; see People v Massie, 2 NY3d 179, 180-184 [2004]). In the case at bar, counsel elicited during cross-examination that the complainant's half brother had had difficulties and issues with defendant. As a result, the witness's credibility was placed in issue, and defendant opened the door to an explanation of the source of those "difficulties and issues," or the "bad blood" between defendant and the witness (see People v Rojas, 97 NY2d 32, 38 [2001]; People v Schwerbel, 224 AD2d 830, 831 [1996] [the defendant's testimony "opened the door to the presentation of further evidence bearing on the actual state of their relationship"]; see also People v Greenhagen, 78 AD2d 964, 965 [1980] ["(t)he purpose of redirect examination of a witness is to rehabilitate the witness by explaining, among other things, any testimony of the witness on cross-examination which may have affected (his) credibility," citing Fisch, New York Evidence (2d ed), § 344]).
Defendant's contention regarding two improper questions the prosecutor asked him during cross-examination is without merit. The first question, whether defendant knew why his former wife had told the police that she saw him sleeping with his daughter, was never answered, and when defendant's counsel objected and moved to strike the question, the court indicated that "[t]here was no answer." When the prosecutor subsequently asked whether his current wife, who lived in Pakistan, had any feelings about him living with his former wife and children from that relationship, to which defendant answered "yes," counsel immediately objected, the court sustained the objection, struck the answer, and instructed the jury to disregard the answer. In its charge to the jury, the court stated that any "[t]estimony that was stricken from the record or to which an objection was sustained, must be disregarded by you." The jury is presumed to have followed the trial court's instructions (see People v Baker, 14 NY3d 266, 274 [2010]; People v Callender, 123 AD3d 840 [2014]). Under these circumstances, the fact that the prosecutor asked these two questions while cross-examining defendant does not require reversal (see People v Callender, 123 AD3d at 840; People v Simmons, 39 AD3d 235, 236 [2007] [trial court sustained objections and offending questions were never answered]; People v Ferrara, 4 Misc 3d 142[A], 2004 NY Slip Op 51055[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2004]). Moreover, the "prosecutor did not engage in a pervasive pattern of flagrant misconduct" (People v Sorrell, 108 [*2]AD3d 787, 793 [2013]; cf. People v Rowley, 127 AD3d 884, 885 [2015]).
Defendant was assisted by an Urdu interpreter during the trial. Defendant never claimed in the Criminal Court that he was forced to use an interpreter during his testimony, and never objected to the presence of the interpreter while he testified. Thus, his claim is unpreserved for appellate review (see CPL 470.05 [2]). After the People rested their case, counsel indicated that defendant would testify. Counsel told the court that he wanted to question defendant directly, without the interpreter, "for logistical reasons." The court indicated that defendant should not be permitted to "switch back and forth," and that defendant might need the interpreter "to understand the questions clearly when he is being asked the questions." Rather than objecting, counsel asked the court whether "my client [must] respond in Urdu or can he respond in English?" The court responded, "[i]f he wants to respond in English . . . I don't think that's a problem. If he understands the question. I'm asking the interpreter to interpret every question." After a few minutes of direct examination, the court agreed, with the jury's approval, to have the Urdu interpreter translate only the questions, not the answers. Thus, the court did not compel defendant to use the interpreter. Rather, the court providently exercised its discretion in determining whether an interpreter was necessary for defendant to meaningfully participate in his own defense and in the court proceedings (see People v Lee, 21 NY3d 176, 179 [2013]; People v Warcha, 17 AD3d 492, 492-493 [2005]; People v Perez, 198 AD2d 446, 447 [1993]; People v Navarro, 134 AD2d 460 [1987]).
CPL 530.12 (5), relating to family offenses, and CPL 530.13 (4), relating to crimes other than family offenses, require a sentencing court, if a temporary order of protection was issued, to "state on the record the reasons for issuing or not issuing an order of protection. The duration of such and order shall be fixed by the court" (see People v Beckers, 94 AD3d 774, 775 [2012]). Here, the Criminal Court complied with the statute, as the order of protection itself clearly "fixed" the expiration date of November 5, 2018.
Accordingly, the judgment of conviction is affirmed.
Pesce, P.J., Weston and Elliot, JJ., concur.
Decision Date: September 20, 2016