Zhiwen Yang v Harmon (2023 NY Slip Op 00893)

Zhiwen Yang v Harmon

2023 NY Slip Op 00893

Decided on February 15, 2023

Appellate Division, Second Department

Wooten, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 15, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
PAUL WOOTEN
JOSEPH A. ZAYAS
LILLIAN WAN, JJ.

2019-14273
 (Index No. 705471/17)

[*1]Zhiwen Yang, et al., respondents,
v
Gregory K. Harmon, etc., et al., appellants, et al., defendant.

APPEAL by the defendants Gregory K. Harmon and Gregory K. Harmon, M.D., P.C., in an action to recover damages for medical malpractice and lack of informed consent, etc., from an order of the Supreme Court (Peter J. O'Donoghue, J.), dated October 23, 2019, and entered in Queens County. The order, insofar as appealed from, denied those defendants' motion, in effect, to vacate so much of an order of the same court dated November 28, 2018, as directed that the daughter of the plaintiff Zhiwen Yang is to serve as interpreter at that plaintiff's deposition.

Amabile & Erman, P.C., Staten Island, NY (Irene P. Ziegler and Charles A. Franchini of counsel), for appellants.
Targum & Britton, LLP (Michael H. Zhu, New York, NY, of counsel), for respondents.

WOOTEN, J.

OPINION & ORDER
This appeal raises novel questions as to what circumstances would enable an individual to serve as interpreter at a deposition for a party with whom that individual is closely related or to serve as an interpreter in an action in which he or she is a material witness, and as to the obligations of the parties in attempting to locate an interpreter with no relation to a party or personal knowledge of the relevant facts. We hold that only under exceptional circumstances—not present here—may an individual serve as interpreter for a relative or in an action in which the proposed interpreter will be a witness.
I. Factual Background
The plaintiff Zhiwen Yang (hereinafter Yang) was a patient of the defendant doctor Gregory K. Harmon from August 24, 2015, to November 25, 2015, for the treatment of a cataract of the right eye. During that period, Harmon performed an operative procedure to remove the cataract. Following that procedure, Harmon allegedly prescribed medications to Yang, including Ketorolac. Yang allegedly sustained injuries including loss of vision in her right eye.
In April 2017, Yang, and her husband, Keping Qu, suing derivatively, commenced this action to recover damages for medical malpractice and lack of informed consent against, among others, Harmon and his medical practice, Gregory K. Harmon, M.D., P.C. (hereinafter together the defendants). The plaintiffs alleged, inter alia, that the defendants departed from the accepted standard of care in providing pre-operative, operative, and post-operative care, and prescribed contraindicated medications for Yang, without informing her of the risks, potential adverse reactions, or alternatives.
Yang's deposition was scheduled to take place on March 2, 2018. According to an affidavit from Mandi Biello, a calendar coordinator for the defendants' counsel, her responsibilities included retaining an interpreter for depositions of parties who do not speak English. Biello averred [*2]that, prior to the scheduled date for Yang's deposition, she was advised by the plaintiffs' counsel that Yang, who did not speak English, required the services of a Mandarin interpreter. Biello indicated that she retained a Mandarin interpreter to appear at the deposition, but that interpreter was unable to interpret for Yang because the interpreter "did not speak the same dialect" as Yang. As a result, the deposition did not take place on March 2, 2018.
Thereafter, Biello contacted various translation companies in New York and New Jersey, and advised the plaintiffs' counsel of the name of a potential interpreter. However, that interpreter was not able to adequately interpret for Yang. Biello averred that she also contacted the Chinese Consulate in New York, but received no responses to her inquiries.
Biello indicated that "[a]lthough I was initially advised that the plaintiff required a Mandarin interpreter, I was told after the deposition that Ms. Yang would require an interpreter who spoke Guizhou." However, Biello stated that she subsequently learned that "Guizhou is not a language but rather a region in China where the residents speak a number of different dialects." Biello added that she was never provided with "the exact dialect Ms. Yang speaks," as would be needed to obtain a suitable interpreter for her deposition.
On October 24, 2018, George Kao, a senior court interpreter employed by the New York State Unified Court System, was instructed to assist the parties in locating a suitable interpreter for Yang. In Kao's affidavit, he averred that he met with Yang and her daughter, Wenhong Qu, also known as Virginia Qu (hereinafter Qu), on October 31, 2018. Kao indicated that, after speaking with them, he advised the Supreme Court and counsel for all parties that "there were no official court interpreters employed by UCS who could help in this case." Kao attested that he recommended that someone contact Geneva Worldwide, an interpreting company, and that the plaintiffs' counsel contacted that agency and represented that it did not employ anyone who could accurately interpret for Yang. Kao also stated that he made inquiry with the language department at the Office of Court Administration, which contacted the "Asian Bar Association" and received information regarding two Chinese students studying in the United States, but neither of those students was "able to fully understand the plaintiff." Kao then advised the plaintiffs' counsel to contact the head of a Chinese-American bar affinity group in Queens, which did not result in the discovery of a suitable interpreter.
Kao stated that "[d]espite my best efforts and having exhausted my personal and professional network, I have been unable to locate an appropriate interpreter who can help in this case." However, Kao indicated that Qu was able to "fully and completely communicate with her mother and she also speaks fluent English."
In an order dated November 28, 2018, the Supreme Court, inter alia, directed that Qu serve as interpreter at Yang's deposition, to be conducted on or before February 15, 2019.
In a letter dated December 18, 2018, the plaintiffs' attorney requested that the defendants' counsel contact his office to schedule Yang's deposition. In a responsive letter dated December 19, 2018, the defendants' attorney notified the plaintiffs' counsel that an agency had been located which might be able to provide an interpreter for Yang, but information was needed from the plaintiffs regarding the specific dialect she speaks to ensure the agency could provide a suitable interpreter. The defendants' counsel enclosed a map of the Guizhou Province and requested that Yang circle the area on the map where she comes from to aid in determining her dialect. The defendants' counsel also attached a list of 12 dialect subdivisions of Southwestern Mandarin and requested that Yang circle the particular dialect she speaks. There is no indication in the record that the plaintiffs responded to the defendants' letter.
Thereafter, the defendants moved, in effect, to vacate so much of the order dated November 28, 2018, as directed that Qu serve as interpreter at Yang's deposition. In support of the motion, the defendants argued, inter alia, that Qu was not a proper person to serve as interpreter because she was related to Yang. In addition, the defendants asserted that Qu could not serve as interpreter because she would be a witness in this action, as she had accompanied Yang to medical appointments with Harmon and interpreted all conversations between Yang and Harmon.
In opposition to the motion, the plaintiffs submitted, inter alia, an affidavit from Qu, who averred that she had been born in Guizhou, a province in western China, and that her primary spoken language was a "subdialect of Mandarin Chinese that is native to the region," although she was also fluent in English. Qu attested that "[a]lthough I am related to the plaintiff, I verily state that I am willing and able to interpret my mother's testimony accurately, completely and impartially."
In an attorney affirmation submitted in opposition to the motion, the plaintiffs' attorney argued that the defendants "waived their right to object to the appointment of Ms. Qu by failing to raise any objections when attempts to locate an interpreter failed in the months leading up [*3]to this Court's November 28, 2018 order." The attorney further contended that the defendants failed to demonstrate that Qu was biased, and that there was no individual other than Qu available to act as an interpreter for Yang. The plaintiffs' attorney did not dispute that Qu would be a witness based on her personal knowledge of the discussions between Yang and Harmon, or claim to have disclosed to the defendants any information regarding the specific dialect spoken by Yang.
In an order dated October 23, 2019, the Supreme Court, inter alia, denied the defendants' motion, in effect, to vacate so much of the order dated November 28, 2018, as directed that Qu serve as interpreter at Yang's deposition. The order did not contain any explanation for the court's determination. The defendants appeal.
II. Relevant Precedent
There is a paucity of New York State case law discussing the appointment of an individual to serve as interpreter for a party with whom that individual is closely related. The first such New York case was Matter of James L. (143 AD2d 533), which synthesized case law from other states to analyze the issue.
In Matter of James L., a juvenile delinquency proceeding, the Family Court directed that the complainant's son could serve as her interpreter. The Appellate Division, Fourth Department, determined that the Family Court's directive was improper, since the Family Court failed to "inquire whether a disinterested interpreter was available," to "question the complainant's son to ascertain the extent of his bias," to "ascertain[ ] the son's qualification to translate," or to "admonish [the son] to translate exactly what the . . . witness had said" (id. at 534). In so holding, the Fourth Department emphasized that "[a]n interpreter should be one who has no bias or interest in the outcome of a case," since "the danger that a . . . witness' message will be distorted through interpretation is compounded when the interpreter is biased one way or the other" (id. [internal quotation marks omitted]). The Fourth Department also observed that while "it sometimes may be necessary to appoint an interested interpreter . . . where no competent disinterested interpreter is available," "such an interested person should not be utilized unless and until the [court] is satisfied that no disinterested person is available who can adequately translate the . . . witness' testimony" (id. [internal quotation marks omitted], citing State in Interest of R.R., 79 NJ 97, 398 A2d 76; People v Allen, 22 Ill App 3d 800, 317 NE2d 633; Kley v Abell, 483 SW2d 625 [Mo App]). Further, "[e]ven where the court permissibly appoints an interested interpreter, the [court] must interrogate [the appointed individual] in order to gauge the extent of his [or her] bias and admonish him [or her] that he [or she] must translate exactly what the . . . witness has said" (Matter of James L., 143 AD2d at 534).
After Matter of James L. was decided, the Appellate Division, First Department, decided a case involving an interested interpreter in People v Lee (89 AD3d 633). That case concerned a criminal trial in which one of the victims testified through a Cantonese interpreter who disclosed that he was "acquainted with the victims" (id. at 634). The First Department determined that the use of that individual as interpreter was not error because the individual "was not a private citizen," but rather a court-employed interpreter who "was presumably well aware of his duty to translate testimony verbatim and accurately," "the interpreter knew nothing of the facts of th[e] case," and "the court . . . thoroughly questioned the court interpreter about any possibility of bias" (id.).
The First Department's decision was affirmed by the Court of Appeals in People v Lee (21 NY3d 176), wherein the Court determined that the trial court providently exercised its discretion in declining to remove the individual as interpreter. The Court noted that the interpreter had disclosed his friendship with the complainant's husband, denied any knowledge of the facts of the case, and indicated that he would not be uncomfortable translating for the complainant. The Court concluded that the danger that the interpreter, a state employee who had taken an oath to interpret testimony accurately, would distort the testimony was "remote, particularly because he possessed no knowledge concerning the facts of the case" (id. at 180).
The only Appellate Division, Second Department, decision touching on this issue is Matter of Edwin N. (51 AD3d 928). In that case, a juvenile delinquency proceeding, the appellant argued on appeal that the Family Court erred in proceeding with a fact-finding hearing without a Bassa language interpreter having been appointed for his mother. This Court determined that there was no error because a Bassa language interpreter was made available before the presentation of the appellant's case at the fact-finding hearing. Moreover, insofar as relevant to this appeal, this Court observed that the appellant's adult sister, who was fluent in both Bassa and English, was present for the entire hearing. This Court concluded that, contrary to the appellant's contention, the appellant's [*4]sister was a suitable interpreter because "there is no indication in the record that [she] was burdened by a significant conflict of interest" (id. at 929).
III. Analysis
Initially, there is no merit to the plaintiff's contention that the defendants waived their right to challenge the Supreme Court's directive that Qu serve as interpreter for Yang. "A waiver is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence," but rather "the party claiming a waiver must proffer evidence of a voluntary and intentional relinquishment of a known and otherwise enforceable right" (Cavayero v Cavayero, 184 AD3d 801, 802 [internal quotation marks omitted]). Here, there is no indication in the record that the possibility of Qu serving as interpreter was discussed with the defendants at any time in the months leading up to the issuance of the order dated November 28, 2018, let alone that the defendants or their counsel ever consented to have Qu serve as interpreter. Thus, even assuming that, as the plaintiffs claim, the defendants "did nothing to help" find a suitable interpreter, such failure to act would not constitute a waiver.
Turning to the issue of whether the Supreme Court's directive that Qu serve as interpreter for Yang was a provident exercise of discretion, it is first necessary to evaluate the circumstances under which a party may use a relative as an interpreter. Case law from New York, other states, and federal courts have been largely consistent in holding that the appointment of a party's relative to serve as his or her interpreter is permissible, but only when "absolutely necessary" as a last resort (Matter of James L., 143 AD2d at 534; see United States v Ball, 988 F2d 7, 10 [5th Cir]; Prince v Beto, 426 F2d 875 [5th Cir]; State v Van Tran, 864 SW2d 465, 475-476 [Tenn Sup Ct]; State in Interest of R.R., 79 NJ at 118, 398 A2d at 86; Morse v Phillips, 157 Miss 452, 128 So 336; Brown v State, 59 SW 1118 [Tex Crim App]). Further, the "least biased person available should be appointed" (Kley v Abell, 483 SW2d at 628), and the court should conduct a hearing to determine whether a "less interested" interpreter is available (State in Interest of R.R., 79 NJ at 119, 398 A2d at 87 [internal quotation marks omitted]) and to ensure that the potential interpreter "would give an accurate and unbiased translation" (State v Van Tran, 864 SW2d at 476; see Matter of James L., 143 AD2d at 534). In conducting such a hearing, the court must be apprised of the language spoken by the witness in need of an interpreter, since without such information, it would be impossible for the court to determine whether a disinterested interpreter is available (see Matter of James L., 143 AD2d at 534). In addition, the court must consider whether the potential interpreter has personal knowledge of the facts of the case, and might himself or herself be a witness (see People v Lee, 21 NY3d at 180; Ozuna v State, 703 NE2d 1093, 1099 [Ind App]).
Consequently, we hold that the appointment of an individual to serve as interpreter for a relative or to serve as interpreter in an action or proceeding in which the interpreter has personal knowledge of the relevant facts is only permissible under exceptional circumstances. In evaluating whether such circumstances are present, courts must consider the following: (1) whether sufficient information has been disclosed by the party in need of an interpreter to the court and to opposing parties so as to allow for a thorough search for a disinterested interpreter; (2) whether an exhaustive and meaningful search has been conducted for a disinterested interpreter; (3) whether the potential interpreter is the least interested individual available to serve as interpreter; and (4) whether the potential interpreter is capable of objectively translating the testimony verbatim, which may only be assessed after the court has conducted an inquiry of the potential interpreter. Unless the court is satisfied that each of these four elements has been satisfied, then the potential interpreter must not be permitted to serve as interpreter in view of the "danger that [the] witness' [testimony] will be distorted through interpretation," "either consciously or subconsciously" (Matter of James L., 143 AD2d at 534 [internal quotation marks omitted]).
Applying this standard here, we determine that the Supreme Court should not have directed that Qu serve as interpreter for Yang.
With regard to the first element, there is no indication in the record that the plaintiffs ever disclosed the specific dialect spoken by Yang to the court, to the defendants, or to any translation companies (see id.). Indeed, in Qu's affidavit, she did not indicate the specific dialect spoken by her and Yang, referring to it simply as "a subdialect of Mandarin Chinese that is native to the region and spoken daily in my home." Likewise, on appeal the plaintiffs continue to refer to Yang's language as either "the Guizhou dialect"—despite the fact that Guizhou is a province, and not a dialect—or simply a "subdialect of Mandarin." Without any information as to the specific dialect spoken by Yang, it would have been effectively impossible for anyone to locate a disinterested interpreter who speaks the same dialect, unless a Mandarin interpreter selected to [*5]appear at a deposition happened to, by chance, speak the same subdialect as Yang.
Moreover, there is no indication in the record that the plaintiffs responded to the defendants' request that Yang circle the area on a map of the Guizhou Province to indicate where she comes from so as to aid in determining her dialect, or to circle the particular dialect spoken by Yang from a list of 12 dialect subdivisions of Southwestern Mandarin. Had the plaintiffs provided a response to that inquiry, it is conceivable that the defendants would have been able to locate a suitable disinterested interpreter. In the absence of such information, it would be premature to determine that it was "absolutely necessary" to appoint Qu to interpret her mother's testimony (id.).
Further, with regard to the second element, there is no question that numerous efforts were made to locate a disinterested interpreter over an extended period of time. However, given the absence of sufficient information regarding the specific dialect spoken by Yang as needed to locate a suitable disinterested interpreter, it cannot be said that a meaningful search for a disinterested interpreter was conducted.
With regard to the third element, there is no indication in the record as to the possibility of a less interested interpreter. It is conceivable that other members of Yang's family might speak the same dialect, who—unlike Qu—were not present during visits between Yang and Harmon, and thus, would at least lack personal knowledge of the relevant facts of this action (see State in Interest of R.R., 79 NJ at 119-120, 398 A2d at 86-87). The plaintiffs do not dispute that Qu will be a material witness in this action given that she served as interpreter between Yang and Harmon, which heightens the already inherent risk in permitting an individual to interpret the testimony of a relative (cf. People v Lee, 21 NY3d at 180).
Finally, with regard to the fourth element, the Supreme Court failed to conduct any inquiry of Qu to assess her capacity to objectively interpret her mother's testimony verbatim (see Matter of James L., 143 AD2d at 534; cf. People v Lee, 21 NY3d at 180). Rather, the court simply accepted Qu's conclusory statement in her affidavit that "[a]lthough I am related to [Yang], I verily state that I am willing and able to interpret my mother's testimony accurately, completely and impartially." Notably, Qu did not aver that she was capable of interpreting accurately and completely despite her personal knowledge of the relevant facts in this action. In light of Qu's personal knowledge of the relevant facts, there was an apparent risk she might, consciously or unintentionally, fill in any gaps in Yang's testimony or even change the testimony to the extent Qu remembered the events at issue occurring differently than Yang's recollection. Based on that risk, the Supreme Court's failure to engage in any inquiry of Qu prior to directing that she serve as interpreter was erroneous.
Under the circumstances of this case, the Supreme Court should have granted the defendants' motion to the extent of vacating so much of the order dated November 28, 2018, as directed that Qu serve as interpreter at Yang's deposition. Accordingly, the order dated October 23, 2019, is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, and the defendants' motion, in effect, to vacate so much of the order dated November 28, 2018, as directed that the daughter of Yang is to serve as interpreter at that plaintiff's deposition is granted.
CHAMBERS, J.P., ZAYAS and WAN, JJ., concur.
ORDERED that the order dated October 23, 2019, is reversed insofar as appealed from, on the law, on the facts, and in the exercise of discretion, with costs, and the motion of the defendants Gregory K. Harmon and Gregory K. Harmon, M.D., P.C., in effect, to vacate so much of the order dated November 28, 2018, as directed that the daughter of the plaintiff Zhiwen Yang is to serve as interpreter at that plaintiff's deposition is granted.
ENTER:
Maria T. Fasulo
Clerk of the Court